Mary Jo O'Neill, AZ Bar No. 005924
Christina Vigil Frazier, NM Bar No. 20387
Syreeta Tyrell, AZ Bar No. 034273
Paula C. Salazar, CA Bar No. 327349
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**
**Phoenix District Office**
3300 North Central Ave., Suite 690
Phoenix, AZ 85012
Telephone: (602) 661-0059
Fax: (602) 640-5071
Email:  mary.oneill@eeoc.gov
        christina.vigil@eeoc.gov
        syreeta.tyrell@eeoc.gov
        paula.salazar@eeoc.gov

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Equal Employment Opportunity Commission, | **CIVIL ACTION NO.:** |
| Plaintiff, | **COMPLAINT** |
| v. | **(JURY TRIAL DEMANDED)** |
| Teetszinty, LLC; Teetszinty 2, LLC; Teetszinty Holding LLC, formerly Wag N' Wash, d/b/a Bark If You're Dirty, | |
| Defendants. | |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil

Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide

appropriate relief to Charging Party Kelly Nichols and other aggrieved individuals who were

adversely affected by such practices during their employment with Defendants Teetszinty, LLC; Teetszinty 2, LLC; and Teetszinty Holding LLC, all formerly known as Wag N' Wash, d/b/a Bark If You're Dirty (collectively, "Bark If You're Dirty" or "Defendants"). As asserted with greater particularity below, the Equal Employment Opportunity Commission ("EEOC") alleges that Bark If You're Dirty subjected Nichols and other aggrieved individuals to sexual harassment because of their sex (female), including but not limited to subjecting the women to frequent sexually-charged comments and discussions about employees and customers, nude photos, unwelcome physical touching, and sexual propositioning of employees. This conduct created a hostile work environment because of Nichols' and the other aggrieved individuals' sex. Further, Bark if You're Dirty retaliated against Nichols and other aggrieved individuals for engaging in protected activity, including but not limited to failing to promote aggrieved individuals, threatening to fire employees who reported inappropriate sexual conduct, and scheduling aggrieved individuals for shifts with their harassers despite having notice of the harassment. Bark if You're Dirty also discharged and constructively discharged Nichols and other aggrieved individuals because of their sex and in retaliation for opposing and/or reporting the sexual harassment or retaliation. Finally, Bark If You're Dirty violated 29 C.F.R. § 1602.14 when it failed to preserve personnel records related to Nichols' complaint of sexual harassment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3. The EEOC is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Teetszinty, LLC; Teetszinty 2, LLC; and Teetszinty Holding LLC have continuously been doing business in the State of Arizona, specifically in the cities of Phoenix and Scottsdale, and has continuously had at least 15 employees.

5. At all relevant times, Teetszinty, LLC; Teetszinty 2, LLC; and Teetszinty Holding LLC have continuously been an employer engaged in an industry affecting commerce under §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Teetszinty, LLC; Teetszinty 2, LLC; and Teetszinty Holding LLC employed Charging Party Kelly Nichols ("Nichols") and the other aggrieved individuals adversely affected by the alleged unlawful employment practices.

7. At all times, Teetszinty, LLC; Teetszinty 2, LLC; and Teetszinty Holding LLC operated as an integrated enterprise.

## ADMINISTRATIVE PROCEDURES

8. More than thirty days before the institution of this lawsuit, Nichols filed a charge with the EEOC alleging Defendants violated Title VII.

9. The EEOC provided Defendants with notice of Nichols' charge of discrimination on July 14, 2017.

10. The EEOC conducted an investigation regarding the allegations made in the charges of discrimination.

11. The EEOC issued an Amended Letter of Determination to Defendants finding reasonable cause to believe that Defendants had violated Title VII.

12. Prior to filing suit, EEOC invited Defendants to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

13. On August 2, 2023, the EEOC issued a Notice of Failure of Defendants advising it that the EEOC was unable to secure conciliation agreements acceptable to the EEOC.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF CLAIMS**

15. During the relevant time period, Teetszinty, LLC; Teetszinty 2, LLC; Teetszinty Holding LLC, formerly known as Wag N' Wash, d/b/a Bark If You're Dirty operated as an integrated enterprise. Evidence of Bark if You're Dirty operating as an integrated enterprise includes but is not limited to the following:

   a) Teetzsinty LLC applied for and was approved to register the trade name of Wag N' Wash with the Arizona Secretary of State on or about May 25, 2005.

   b) Wag N' Wash was independently owned and operated by brothers Steve Strauss and Rich Strauss under Teetszinty, LLC.

   c) In June 2022, the Wag N' Wash locations in Arizona changed their name to Bark If You're Dirty.

   d) On November 17, 2022, Teetzsinty LLC applied for the trade name of Bark if You're Dirty with the Arizona Secretary of State.

e)   Teetzsinty LLC and Teetzsinty 2 LLC were doing business as Wag N' Wash and is now doing business as Bark If You're Dirty.

f)   Bark If You're Dirty appears to be identical to Wag N' Wash in all but name: they are in the same locations, offer the same services and supplies, have the same employees, use the same HR company, Infinity HR, to manage HR issues, payroll, and benefits, and are owned and operated by Steve Strauss and Rich Strauss.

g)   Teetzsinty LLC, Teetzsinty Holding LLC, and Teetzsinty 2 LLC all have the same registered agent, Randall Udelman.

h)   Teetzsinty LLC and Teetzsinty Holding LLC have the same principals, Steve Strauss and Rich Strauss.

i)   Teetzsinty 2, LLC has Teetzsinty Holding LLC listed as its principal.

j)   Teetzsinty 2, LLC and Teetzsinty Holding LLC share an address, 4230 N. 7th Avenue, Phoenix, Arizona 85013.

k)   Bark If You're Dirty's Phoenix business location is the same as Teetzsinty 2, LLC and Teetzsinty Holding LLC's address: 4230 N. 7th Avenue, Phoenix, Arizona, 85013.

l)   The principals for Teetzsinty Holding LLC share an address with Teetzsinty LLC, 4308 E. Montecito Ave., Phoenix Arizona 85018.

16. Bark if You're Dirty hired Nichols as a groomer at its Scottsdale location on January 7, 2017.

17. Since the beginning of her employment, Nichols often worked with Stephen Kelley ("Kelley"), a male groomer.

5

18. Kelley began to touch Nichols' body and make frequent sexual comments, including sexually propositioning Nichols, soon after she started her employment.

19. On multiple occasions and sometimes multiple times per day, Kelley made inappropriate comments about Nichols' appearance, for example calling her pretty, telling her that her jeans made her ass look good, and that she had a nice butt.

20. Kelley sexually propositioned Nichols several times, telling her that she should break up with her boyfriend and date him instead.

21. On about five occasions, Kelley physically grabbed Nichols' butt without her consent.

22. Nichols found Kelley's behavior to be uncomfortable and offensive.

23. Kelley's sexual behavior towards Nichols continued despite Nichols' repeated requests that he stop.

24. Specifically, Kelley continued to subject Nichols to regular and frequent sexual comments, sexual invites, and sexual physical touching. The conduct would occur on a daily basis, and sometimes multiple times a day during the times that Nichols worked the same shift as Kelley.

25. During Nichols' employment, she complained of Kelley's conduct to manager Roxanne McAfee at least three times.

26. McAfee did not address Nichols' complaints and beginning around April 2017, Kelley became more aggressive towards Nichols in the workplace, getting in her face and yelling at her about work-related issues.

27. On or about May 20, 2017, after Nichols continually rejected Kelley's sexual advances, Kelley yelled at Nichols about work-related issues, getting so close to her face that Nichols could

6

feel his breath and saliva. Kelley pinned Nichols between the dog grooming tables threatening that he would make her job a living hell.

28. On May 21, 2017, Nichols reported this incident to supervisor McAfee who told Nichols they would discuss it at her next shift.

29. During Nichols' next shift, however, McAfee was not present and Nichols was afraid to be at work, dreading an interaction with Kelley.

30. On May 22, 20217, Nichols called supervisor McAfee about her sexual harassment complaint. Supervisor McAfee suggested that she, Nichols, and Kelley meet that same day to discuss Nichols' complaint.

31. Because Nichols was afraid and did not want to discuss Kelley's repeated sexual harassment in front of her harasser, Nichols advised Supervisor McAfee that she did not want to meet with Kelley, and instead wanted to meet separately with her supervisor.

32. Nichols believed that Bark if You're Dirty was not taking her complaint seriously and requested to be transferred to Bark if You're Dirty's Phoenix store due to Kelley's escalating harassing behavior, including the recent yelling in Nichols' face and threatening to make her job a living hell.

33. Supervisor McAfee did not respond to Nichols' requests and instead insisted on the three of them (McAfee, Nichols and Kelley) meeting with Bark if You're Dirty's owners to discuss Nichols' sexual harassment complaint.

34. Later, when interviewed about this incident during the administrative investigation of this charge, Bark If You're Dirty owners Richard and Steve Strauss, and supervisor McAfee all confirmed that Bark if You're Dirty documented Nichols' May 2017 complaint, even though Nichols declined the meeting, but that it did not have these documents in its possession.

35. On or around May 22, 2017, because of Kelley's unaddressed ongoing sexual harassment, Nichols obtained an Injunction Against Harassment, Workplace Harassment from the Scottsdale City Court in Arizona.

36. Nichols filed the injunction because she did not believe that Bark if You're Dirty was taking her reports of sexual harassment seriously.

37. On or around May 26, 2017, Nichols served the injunction on Kelley at Bark if You're Dirty.

38. The injunction prohibited Kelley from having contact with Nichols and going near her place of work.

39. Kelley did not contest the Injunction Against Harassment in court.

40. Supervisor McAfee was present at Bark if You're Dirty when Kelley was served with the injunction.

41. After service of the injunction, supervisor McAfee again asked to meet with Nichols, but Nichols was on pre-approved leave and unavailable to meet.

42. On or about May 31, 2017, supervisor McAfee texted Nichols and asked Nichols to stop contacting her. McAfee informed Nichols that her final option was to come into store to meet with McAfee, Bark If You're Dirty owners, and Kelley.

43. As Nichols previously expressed to supervisor McAfee on May 21, Nichols was unwilling to attend a meeting with Kelley, and she understood this text from McAfee to mean that if she declined the meeting, Bark if You're Dirty terminated her employment.

44. Bark if You're Dirty did not follow up with Nichols after this message.

45. Nichols was also subject to harassment by Bark if You're Dirty's Owner, Rich Strauss ("Strauss"), during her employment. When she was trimming a dog's nails Strauss made a remark about her knowledge of taking care of the "tip of a male," referring to a male's penis.

46. Kelley harassed other Bark if You're Dirty female employees since at least January 2017 through at least February 23, 2020, and his behavior included, but was not limited to: frequent sexual and degrading comments about female customers and employees, comments about his personal romantic and sexual relationships, showing naked photos to female employees, and sexually propositioning female employees.

47. Other female employees complained to Bark if You're Dirty managers about Kelley's inappropriate behavior and told Kelley to stop on numerous occasions.

48. For example, in late 2018, an employee complained to operations manager Brittany Skahill ("Skahill") about Kelley's constant sexual comments, but Skahill dismissed and ignored the complaint.

49. Despite aggrieved individuals' rebuffs, Kelley made daily sexual remarks to aggrieved individuals, such as asking about the aggrieved individuals' sex life and sexual preferences and making sexualized comments about their bodies, propositioning aggrieved individuals, and showing them nude photos.

50. During the relevant time period, Kelley subjected other Bark if You're Dirty female employees to unwelcome sexual harassment that managers at Bark if You're Dirty knew or should have known about.

51. During the relevant time period, at least one aggrieved individual chose to rearrange her work schedule or shifts, sometimes losing appointments or clients, in order to avoid working

with Kelley, and some female employees were terminated after complaining about Kelley's sexually harassing behavior.

52. Like Nichols, other female employees were subjected to unwelcome sexual conduct, comments, innuendos and touching by managerial officials, supervisors and/or co-workers at Bark if You're Dirty.

53. Nichols and other similarly situated employees wore a t-shirt that stated "Bark if You're Dirty" as part of their work uniform and customers barked at Nichols during her employment.

54. At Bark if You're Dirty's Phoenix store, store manager, Andrew Gallegos ("Gallegos"), similarly subjected female employees to unwelcome sexual conduct and touching.

55. As a store manager, Gallegos supervised employees and had the authority to hire, fire, promote, and demote employees.

56. Since at least 2020 through 2021, store manager Gallegos frequently, often daily, engaged in the following behavior, including, but not limited to: sexual and degrading comments about female customers and employees, crude and/or sexual jokes or innuendos, physically touching female employees, and propositioning female employees for sex.

57. When employees questioned store manager Gallegos about his inappropriate relationship with a subordinate female employee, store manager Gallegos threatened employees with termination if they intervened in his personal romantic relationships.

58. Store manager Gallegos also told employees that if they reported his actions to management, they would not be believed because management would take his side over an employee.

59. Store manager Gallegos did in fact terminate a female employee after she questioned his inappropriate relationship with a subordinate employee and reported him to a manager for constantly sexually harassing female employees.

60. In or around April 2021, before the female employee's termination, the employee reported store manager Gallegos to operations manager Skahill, telling Skahill that store manager Gallegos was sexually harassing female employees.

61. After operations manager Skahill confronted store manager Gallegos about this complaint, store manager Gallegos fired the complaining employee the same day.

62. Store manager Gallegos admitted to operations manager Skahill that he terminated this employee after she discussed his inappropriate relationship.

63. Store manager Gallegos's harassing behavior caused other female employees to resign rather than continue to be subjected to his sexually harassing conduct and management's inaction to prevent, stop, or remedy the sexual behavior.

64. Since at least 2020 through 2021, multiple female employees complained to management about Gallegos's sexual harassment and offensive conduct.

65. Operations manager Skahill received multiple complaints about store manager Gallegos's sexually harassing behavior.

66. For instance, on or about November or December 2020, a female employee complained to operations manager Skahill that when assigned to work closing shifts with Gallegos, he told her that things would go faster if she stayed after hours or went home with him, which she understood as sexual propositioning. Operations manager Skahill expressed incredulity but did not follow up with the employee or take other remedial action.

67. In fact, store manager Gallegos received several warnings and poor performance reviews for inappropriate behavior.

68. During store manager Gallegos's April 2020 annual review, operations manager Skahill directed store manager Gallegos to refrain from talking about non-work related topics, noting that Gallegos's intermixing of his personal life and work life was unacceptable.

69. Operations manager Skahill specifically noted that Gallegos continued to ask employees to give him rides home, after she had previously raised the concern in a past performance review.

70. On May 1, 2020, store manager Gallegos received a written reprimand for asking a female employee to lie to operations manager Skahill after he asked the female employee for a ride home from work.

71. In his May 1, 2020, bonus review, operations manager Skahill again directed store manager Gallegos to stop mixing his personal life with his professional life and not to engage in idle gossip or personal comments.

72. Eventually, in April 2021 operations manager Skahill received a complaint against store manager Gallegos for sexual harassment and sent the complaint to Work Shield, a human resources company, for review.

73. In her referral of the investigation to Work Shield, operations manager Skahill told Work Shield that she had received multiple reports of female employees experiencing sexual harassment from Gallegos and that Gallegos was making sexual advances and sexually harassing the majority of his female employees.

74. Operations manager Skahill admitted to Work Shield that two other employees quit because of store manager Gallegos's conduct.

75. Operations manager Skahill also admitted to Work Shield that store manager Gallegos fired an employee after she commented on his personal relationship with a subordinate employee.

76. Finally, operations manager Skahill told Work Shield that store cameras captured Gallegos threatening employees with termination should they interfere with his relationship.

77. Work Shield conducted an investigation of the sexual harassment complaint against Gallegos, including interviewing multiple employees and store manager Gallegos. At the end of the investigation, Work Shield recommended terminating store manager Gallegos for sexually harassing female employees and dating female subordinate employees.

78. The day after receiving the report from Work Shield, Bark if You're Dirty terminated store manager Gallegos' employment.

79. Bark if You're Dirty did not terminate store manager Gallegos due to his alleged sexual harassment of female employees or because of his inappropriate relationships with female subordinate employees. Instead, Bark if You're Dirty terminated his employment due to performance based job-related issues, such as his email response time and his failure to consistently wear his name tag.

80. Several aggrieved individuals reported not receiving any training on sexual harassment or reporting complaints.

81. Several aggrieved individuals did not receive a copy of Bark if You're Dirty's sexual harassment policy or complaint procedure.

82. Nonetheless, despite not receiving training on Bark if You're Dirty's sexual harassment policy or reporting policy, many aggrieved individuals did report Gallegos's harassing conduct

to management, and management failed to take appropriate or sufficient action to address Gallegos's behavior.

83. Despite having notice of Gallegos's conduct, Bark if You're Dirty took no action or insufficient action to address and remedy Gallegos's sexual harassment of the aggrieved individuals.

84. Bark if You're Dirty did not investigate the complaint(s) for months, monitor the workplace, or discipline Gallegos for his inappropriate sexual conduct and threats, or take any action to correct or address the complaint(s).

85. Bark if You're Dirty terminated Gallegos on May 7, 2021, for unrelated work issues.

## FIRST CLAIM FOR RELIEF

**[Discrimination Based on Sex, Sexual Harassment, Hostile Work Environment, Adverse Employment Action - 42 U.S.C. § 2000e-2(a)]**

86. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

87. Since at least January 2017, Bark if You're Dirty discriminated against Nichols and other aggrieved female employees in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting them to sexual harassment because of their sex, female, creating a hostile work environment.

88. The offensive sexual conduct described in the preceding paragraphs was unwelcome to Nichols and other aggrieved female employees.

89. Bark if You're Dirty subjected Nichols and other women to sexual harassment that was sufficiently severe or pervasive to alter the terms and conditions of their employment.

90. Gallegos, a store manager, directly supervised and had the authority to take tangible employment actions, such as firings, against employees, including against other aggrieved female employees.

91. Store manager Gallegos subjected a class of aggrieved female employees to unwelcome sexual comments, jokes, innuendos, propositions and touching.

92. Bark if You're Dirty is vicariously liable for the creation of a hostile work environment because store manager Gallegos subjected a class of female of employees to sexual harassment.

93. Managerial officials and coworkers subjected Nichols and a class of aggrieved female employees to unwelcome sexual comments, jokes, innuendos, propositions and touching.

94. The sexual harassment of Nichols and other female aggrieved employees was open, notorious, and widely known among employees at Bark if You're Dirty.

95. Nichols and other female employees reported the sexual harassment to Bark if You're Dirty's managers.

96. Bark if You're Dirty knew or should have known about the sexual harassment suffered by Nichols and other aggrieved female employees because of the reports it received, the open and notorious nature of the harassment, the pervasiveness of the harassment and the widespread knowledge of the harassment.

97. Despite receiving complaints and having knowledge of their sexually inappropriate conduct, Bark if You're Dirty failed to take adequate actions to stop, prevent or remedy the sexual harassment of the aggrieved female employees.

98. The effect of the practices complained of above has been to deprive Nichols and other aggrieved female employees of equal employment opportunities and otherwise affect their status as employees because of their sex, female.

99. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

100. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Nichols and other aggrieved female employees.

101. As a result of the events and actions described above, Nichols and a class of aggrieved female employees were deprived of equal employment opportunities, lost wages and benefits, suffered emotional distress and were otherwise adversely affected because of their sex.

## **SECOND CLAIM FOR RELIEF**

### **[Retaliation - 42 U.S.C. §2000e-3(a)]**

102. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

103. Since at least May 2017, Bark if You're Dirty retaliated against Nichols and other aggrieved individuals by discharging them in violation of Title VII, 42 U.S.C. §2000e-3(a), for opposing discrimination or otherwise engaging in a protected activity under Title VII.

104. Nichols engaged in protected activity under Title VII when she reported Kelley's sexually harassing conduct to store manager McAfee on at least three occasions and served an Injunction prohibiting harassment against Kelley.

105. Like Nichols, other aggrieved individuals engaged in protected activity by opposing unlawful employment practices, or by giving testimony, assisting, and/or participating in an investigation, proceeding or hearing.

106. Nichols and other aggrieved employees who complained about sexual harassment and/or the hostile or retaliatory work environment at Bark if You're Dirty suffered adverse terms and conditions of employment because they complained about sexual harassment and retaliation.

107. Nichols and other aggrieved employees suffered adverse treatment, including but not limited to retaliatory harassment and retaliatory discharge, because they engaged in protected activity by opposing and complaining about sexual harassment and retaliation.

108. Bark if You're Dirty discharged Nichols on or about May 31, 2017.

109. The effect of the practices complained of above has been to deprive Nichols and other aggrieved individuals of equal employment opportunities and otherwise affect their status as an employee because of their engagement in protected activity in violation of Title VII.

110. The unlawful employment practices by Bark if You're Dirty described above were intentional.

111. The unlawful employment practices by Bark if You're Dirty complained of herein were done with malice or reckless indifference to Nichols and other aggrieved individuals' federally protected rights.

112. As a result of the events and actions described above, Nichols and a class of aggrieved employees were deprived of equal employment opportunities, lost wages and benefits, suffered emotional distress and were otherwise adversely affected because of their engagement in protected activity.

### THIRD CLAIM FOR RELIEF

### [Constructive Discharge - 42 U.S.C. §2000e-2(a), §2000e-3(a)]

113. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

114. Bark if You're Dirty discriminated against aggrieved individuals by constructively discharging them in violation of Title VII, 42 U.S.C. §2000e-2(a), §2000e-3(a).

115. Aggrieved individuals at Bark if You're Dirty were constructively discharged because of their sex; because of the sexual harassment they endured and Defendant's failure to prevent or remedy the hostile work environment; and/or in retaliation for their opposition to unlawful employment practices.

116. The working conditions created by the unlawful actions alleged in the preceding paragraphs became so intolerable that a reasonable person would not have continued to subject themselves to those conditions.

117. The effect of the practices complained of above has been to deprive aggrieved individuals of equal employment opportunities and otherwise affect their status as an employee because of their sex, female, and/or because of their engagement in protected activity, in violation of Title VII.

118. The unlawful employment practices by Bark if You're Dirty described above were intentional.

119. The unlawful employment practices by Bark if You're Dirty complained of herein were done with malice or reckless indifference to the aggrieved individuals' federally protected rights.

120. As a result of the events and actions described above, a class of aggrieved employees lost wages and benefits, were deprived of equal employment opportunities, suffered emotional distress and were otherwise adversely affected because of the sexual harassment and retaliation.

## FOURTH CLAIM FOR RELIEF

### [Record-Keeping Violation - 42 U.S.C. § 2000e-8(c)]

18

121. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

122. Bark if You're Dirty failed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to make and preserve records related to Nichols' complaint against Kelley alleging sexual harassment which is relevant to the determination of whether unlawful employment practices have been or are being committed.

123. Section 709(c) of Title VII and regulations promulgated under that provision, 29 C.F.R. § 1602.14, require employers to preserve documents relevant to an EEOC charge until action on the charge is terminated, and even in the absence of any charge, to preserve for at least one-year select personnel records.

124. Nichols filed her charge against Bark if You're Dirty on July 13, 2017, for conduct that occurred beginning in January and lasting through May of 2017.

125. Prior to filing her charge, Nichols complained to Bark if You're Dirty at least four times of sexual harassment.

126. Nichols' final complaint to Bark if You're Dirty prior to her charge was made in May of 2017.

127. When interviewed, Bark if You're Dirty confirmed that Nichols' May 2017 complaint was documented, but that it did not have these documents in its possession.

128. Nichols' May 2017 complaint alleged unlawful employment practices under Title VII, which required Bark if You're Dirty to keep the records related to the company's investigation through May 2018.

129. Once Bark if You're Dirty received notice of Nichols' charge with the EEOC, they had a duty to preserve the records until the final disposition of the case.

130.  While it is not known precisely when Bark if You're Dirty destroyed the records, the fact that it no longer possesses the records is a violation of 29 C.F.R. § 1602.14.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Bark if You're Dirty, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in sexual harassment or any other employment practice which discriminates on the basis of sex.

B.  Bark If You're Dirty should be specifically enjoined from retaliating against its employees by disciplining or discharging employees because they undertook protected activity to defend their rights to be equally treated because of their sex.

C.  Order Bark if You're Dirty to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices, including sex discrimination, especially providing sexual harassment training to its managers, supervisors, and non-supervisory employees.

D.  Order Bark if You're Dirty to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals who oppose or report discrimination, especially providing retaliation training to its managers, supervisors, and non-supervisory employees.

E.  Order Bark if You're Dirty to make whole Nichols and other aggrieved individuals, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful

employment practices, including but not limited to lost wages, front pay, reinstatement, benefits, and compensation for all monetary losses.

F.      Order Bark if You're Dirty to make whole Nichols and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses, in amounts to be determined at trial.

G.      Order Bark If You're Dirty to make whole Nichols and other aggrieved individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain, suffering, anxiety, stress, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H.      Order Bark if You're Dirty to pay Nichols and other aggrieved individuals punitive damages for its malice or reckless indifference to their federally protected rights, as described above, in amounts to be determined at trial.

I.      Grant such further relief as the Court deems necessary and proper in the public interest.

J.      Award the EEOC its costs of this action.

**JURY TRIAL DEMAND**

The EEOC requests a jury trial.

RESPECTFULLY SUBMITTED this 28th day of September 2023.

Chris Lage
Deputy General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Christina Vigil Frazier
Assistant Regional Attorney
Albuquerque Area Office

*s/ Paula C. Salazar*
Paula C. Salazar
Syreeta Tyrell
Trial Attorneys

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, Arizona 85012